UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEATRICE JENKINS, JENTRY,
AJA, and ARMANI JENKINS, a/k/a
"THE JENKINS SISTERS,"

                Plaintiffs,

v.                                          Civil Case No. 2:12-cv-15012
                                          Honorable Patrick J. Duggan

WORLD RELIGIOUS RELIEF d/b/a
"THE WORD NETWORK,"
FRONTLINE PRODUCTIONS,
MOLIFE ENTERTAINMENT, LLC,
RONALD P. "PHIL" ELLISON, and
LEXI PRATER ALLEN,

                Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS WORLD RELIGIOUS RELIEF D/B/A "THE WORD NETWORK", LEXI PRATER, AND FRONTLINE PRODUCTIONS

Plaintiffs initiated this lawsuit against Defendants in the United States

District Court for the Eastern District of Arkansas on July 19, 2012. The matter

was transferred to this District on November 13, 2012, when the Arkansas court

granted Defendants' motion for change of venue. In their Amended Complaint,

filed January 31, 2013, Plaintiffs allege the following claims against Defendants:

(I) breach of contract; (II) breach of recording contract; (III) fraud/constructive

fraud; (IV) interference with business relationship/expectancy; (V) interference

with business contract; (VI) Michigan Consumer Protection Act violation; and,

(VII) civil conspiracy.  Plaintiffs' claims arise from Defendants' failure to provide

them with the prizes, including a recording contract, allegedly promised for having

won the 2008 Gospel F.O.C.U.S. singing competition on July 26, 2008.

Presently before the Court is a motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56, filed by World Religious Relief, Frontline

Productions, and Lexi Allen (collectively "Defendants") on November 15, 2013.[1]

(ECF No. 43.)  Plaintiffs filed a response to the motion on December 4, 2013, in

which they stipulate to the dismissal of their tortious interference claims (Counts

IV and V).  (ECF No. 44 at Pg ID 548.)  Defendants filed a reply brief on

December 18, 2013.  (ECF No. 53.)  The Court concludes that oral argument will

not aid in its disposition of the motion and therefore it issued a notice dispensing

with oral argument pursuant to Eastern District of Michigan Local Rule 7.1 on

---

[1]Unable to serve Defendants Ronald Ellison and MoLife Entertainment, LLC (Ellison's business) in the traditional manner, Plaintiffs sought and obtained an order from this Court on December 4, 2013, allowing them to use alternative methods of service.  (ECF No. 48.)  Plaintiffs thereafter submitted proof of compliance with the alternative methods of service (ECF No. 57) and requested and obtained a Clerk's entry of default as to Mr. Ellison and MoLife Entertainment on February 27, 2014.  (ECF Nos. 62, 63.)  Plaintiffs now have a motion for default judgment pending against Mr. Ellison and MoLife Entertainment.

February 10, 2014.  For the reasons that follow, the Court grants in part and denies

in part Defendants' motion for summary judgment.

## I.      Applicable Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is

appropriate "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P.

56(a).  The central inquiry is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251-52, 106 S. Ct. 2505, 2512 (1986).  After adequate time for discovery and

upon motion, Rule 56 mandates summary judgment against a party who fails to

establish the existence of an element essential to that party's case and on which

that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

322, 106 S. Ct. 2548, 2552 (1986).

The movant has the initial burden of showing "the absence of a genuine

issue of material fact."  *Id.* at 323, 106 S. Ct. at 2553.  Once the movant meets this

burden, the "nonmoving party must come forward with specific facts showing that

there is a genuine issue for trial."  *Matsushita Electric Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (internal quotation marks

and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255, 106 S. Ct. at 2513.

## II.    Factual Background

Jentry, Aja, and Armani Jenkins are sisters who began singing gospel music at an early age and eventually took on the name "The Jenkins Sisters." (ECF No. 44 Ex. A at 18.) In February 2008, their mother, Beatrice Jenkins ("Mrs. Jenkins"), saw a commercial on the Work Network– a major gospel television network– for the Gospel F.O.C.U.S. 2008 singing competition (hereafter "the competition"). (ECF No. 44, Ex. A at 34.) Mrs. Jenkins also saw the commercial (referred to by Plaintiffs as the "Gospel FOCUS 2008 spot") on the Internet

-4-

website "youtube.com" and testified during her deposition in this case that a recording of the Gospel FOCUS 2008 spot from that site is identical to the advertisement she saw on the Word Network. (*Id*. at 35.) Mrs. Jenkins' uncle, Bennie Jackson ("Mr. Jackson"), also saw the Gospel FOCUS 2008 spot during this period on the Word Network. (*Id*. Ex. C ¶¶ 1, 3.)

The Gospel FOCUS 2008 spot starts with a display of the Word Network logo. (*See* Gospel Focus 2008 spot video; *see also* ECF No. 44 Ex. B.) Defendant Lexi Allen ("Ms. Allen") appears during the spot, referring to the competition as "only the largest gospel search in the country." (*Id*.) The spot refers to a chance to "be on your way to a one album contract" and the "chance to win $5,000 in cash." (*Id*.) At the bottom of the screen throughout the spot is text directing viewers to "Gospelfocus2008.com", a logo for the competition, and a phone number: 248.350.6100. (*Id*.) Plaintiffs represent that the phone number to this day rings through to the Word Network's automated switchboard.

Mrs. Jenkins decided to enroll The Jenkins Sisters (i.e., her daughters) in the competition. (*Id*., Ex. A at 36.) She accessed the application through the Word Network's Internet website, where she found a link for the competition. (*Id*. at 38.) When she clicked on the link, Mrs. Jenkins was directed to the Gospel FOCUS 2008 spot and then another link which downloaded the application and instructions

on completing the application and submitting the required $50.00 money order to enter. (*Id*. at 38-39.) Mrs. Jenkins testified that the application had the Word Network logo at the top. (*Id*. at 41, 43.) She completed the application, obtained a $50.00 money order, and sent both to a Michigan address. (*Id*. at 37, 40.)

After the application was submitted, Mrs. Jenkins received a message on her mobile phone which she played on speakerphone for her daughters. (*Id*. Ex. D at 19.) According to Aja, the message was from someone identifying herself as a representative from the Word Network, indicating that the $50.00 application had been received, and welcoming the Jenkins Sisters to the competition. (*Id*. at 19-20.)

In April 2008, the Jenkins Sisters attended the primary level auditions for the competition in Atlanta. (*Id*. Ex. A at 43.) The Word Network logo appeared in various places at the location: the skirt of the registration table, the contestants' name tags, the microphones, the video cameras recording the event, the shirts worn by the cameramen, and drapery hanging on stage behind the contestants while they sang. (*Id*. at 43-44, 48; *see also* 2008 Atlanta audition video.) Defendant Allen was present at the audition, holding a microphone with the Word Network logo, and she identified herself as a Word Network employee. (*Id*. Ex. A at 43-44.) The Atlanta auditions aired on the Word Network. (ECF No. 44 Ex. C ¶ 4.)

While the audition aired on the Word Network, advertisements for the following year's competition were displayed in the lower left corner of the screen along with the phone number that Plaintiffs represent is the Word Network's switchboard.  (*See* 2008 Atlanta audition video.)  After they sang, the Jenkins Sisters were told that they would be moving on to the semi-finals and they received a card indicating that they had advanced to the next round.  (*Id*.)  The card had the Word Network logo on it.  (ECF No. 44, Ex. A at 45; Ex. D at 8-9.)  At the end of the video, credits run which identify Jason Prater and "Lexi" as the "Executive Producers."  (2008 Atlanta audition video)  At the conclusion, a logo for "FrontLine Productions" appears on the screen.  (*Id*.)

The Jenkins Sisters proceeded to the semi-finals in Chicago, Illinois.  There, the Word Network logo appeared in the same places that it had at the primaries.  (ECF No. 44 Ex. A at 57-58, 62.)  After singing, the Jenkins Sisters were told that they would be moving on to the finals in Detroit, Michigan.  At that time, Ms. Allen and another individual discussed travel arrangements to Detroit with the girls and their parents.  (*Id*. at 60.)

The finals for the competition took place in July 2008 in Detroit.  (*Id*. at 77.)  Again, the Word Network logo appeared in various places (e.g., contestant badges, cameras).  (*Id*. at 78.)  Ms. Allen hosted the final round.  (*Id*. at 80.)  Eventually the

Jenkins Sisters were declared the winners of the competition by a panel of judges. (*Id*. Ex. C ¶ 11.)  Then, a man introduced himself to the cameras as Lewis Gibbs and indicated that he was the "President" of the Word Network.  (*Id*. Ex. A at 53-54.)  Mr. Gibbs then announced that he was just off the phone with Bobby Jones from Black Entertainment Television and that Mr. Jones wanted to add to the winnings by inviting the Jenkins Sisters to appear on his show.  (*Id*. at 54; Ex. C ¶ 13.)

Next, the Jenkins Sisters were brought on stage and presented with a large novelty check for $5,000.00.  (*Id*. Ex. A at 81.)  The check had the Word Network logo on it and was presented by Ms. Allen, Mr. Jones, and Defendant Phil Ellison. (*Id*. at 80-81; Ex C. ¶ 15.)  While the cameras continued to record the competition, Mr. Ellison identified himself as "President" of Defendant MoLife Entertainment, LLC ("MoLife") and announced that MoLife had "partnered" with the Word Network to provide a one-year recording contract to the competition's winners. (*Id*. Ex. A at 72; Ex. C ¶¶ 14.)  Off camera, after the competition ended, Mr. Ellison outlined the terms of the contract for Mrs. Jenkins.  (*Id*. Ex. A at 85, 87.) Ms. Allen was present during the conversation.  (*Id*. at 88.)  Mr. Ellison told Mrs. Jenkins that MoLife would pay for the girls' studio time "in Fred Hammond's studio" and that he would be working with the producer Fred Hammond to get

their CD marketed online and at Wal-Mart and other stores during a one-year period.  (*Id*. at 86.)  According to Mrs. Jenkins, Mr. Ellison said that the Jenkins Sisters could not sign with anyone else during that one-year period.  (*Id*.)  During this conversation, Ms. Allen or Mr. Prater told the Jenkins' family that the location of the trip they had won would be changed to a more kid-friendly place (given that the girls were 19, 14, and 12 years old at the time of the competition) and that they would get in touch with the family to arrange everything.  (*Id*. at 88, 101; Ex. D at 6.)

After these conversations, the Jenkins Sisters and their parents were asked to sign a document agreeing to certain terms.  (*Id*. Ex. D at 18-19; Ex. F at 5.)  Aja could not recall the terms of the document when asked during her deposition; however, she did remember that Frontline and the Word Network were identified as parties on the document.  (*Id*. Ex. D at 19.)  The family never received a copy of the document they signed.  (*Id*. at 22.)

Thereafter, while the Jenkins Sisters received a real check for $5000.00, they did not receive the other prizes that Plaintiffs claim were promised to the competition's winner.  When Mrs. Jenkins subsequently contacted Mr. Ellison about the recording contract, he told her that he was in the process of "getting licensed oversees in London" and so it was taking him longer to honor his

obligation to the Jenkins Sisters.  (ECF No. 44 Ex. A at 89-90.)  It was at this time that Mrs. Jenkins learned from Mr. Ellison that he still had not completed the recording promised to the winners of the 2007 Gospel FOCUS competition.  (*Id*.)

Mrs. Jenkins continued to contact Mr. Ellison every two to three weeks about the status of the contract.  (*Id*. at 93.)  He led her to believe that it would happen and that he would be putting the Jenkins Sisters on tour and marketing them overseas.  (*Id*. at 94-96.)  According to Mrs. Jenkins, Mr. Ellison went so far as to suggest that the girls be placed in home schooling to accommodate their "touring schedule."  (*Id*. at 14.)  Mrs. Jenkins therefore started home schooling Aja.  (*Id*. at 15.)  Approximately six months after the Jenkins Sisters won the competition, Mrs. Jenkins began hearing rumors that MoLife was going bankrupt and she called Mr. Ellison to "confront[]" him.  (*Id*. at 96, 108.)  In response, Mr. Ellison blamed Ms. Allen and the Word Network for his financial troubles, explaining that they "never contributed" and it "fell on" him to make good on the contracts.  (*Id*. at 97.)

Mrs. Jenkins testified that after that telephone conversation, Mr. Ellison "dropped off the face of the earth" and she began reaching out to Ms. Allen regarding the promised prizes.  (*Id*. at 108.)  Mrs. Jenkins called Ms. Allen at the Word Network.  (*Id*. at 109.)  After leaving several messages for Ms. Allen, Mrs.

-10-

Jenkins eventually reached her. (*Id*.) Ms. Allen apologized for the delay and told Mrs. Jenkins that they were working on it and to be patient. (*Id*. at 109-110.) When Mrs. Jenkins continued to call, Ms. Allen eventually said that if Mrs. Jenkins sent the Word Network a video of the Jenkins Sisters singing, Vaughn Alvarez at the Word Network could air it on a show. (*Id*. at 114.) Mrs. Jenkins finally called Mr. Alvarez through the Word Network number. (*Id*.) He told her to leave them alone and to stop calling Ms. Allen and the network. (*Id*.)

Plaintiffs then brought the instant suit to recover the prizes they claim the Jenkins Sisters were promised as the winners of the competition.

### III.   Applicable Law and Analysis

Defendants seek summary judgment with respect to all of Plaintiffs' claims: breach of contract (Counts I and II); fraud/constructive fraud (Count III); tortious interference (Counts IV and V); Michigan Consumer Protection Act violation (Count VI); and, civil conspiracy (VII). In their motion, Defendants also ask the Court to sanction Plaintiffs' counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure. Defendants contend that sanctions are warranted because counsel has filed claims against them that, Defendants maintain, are frivolous.

As indicated earlier, in response to the motion, Plaintiffs stipulate to the dismissal of their tortious interference claims. Thus the Court will not address

-11-

those claims here.

Defendants' primary argument in support of their motion is that Plaintiffs lack evidence to show that World Religious Relief (d/b/a "The Word Network"), Frontline Productions, or Ms. Allen are liable to them. Defendants contend that Plaintiffs lack evidence to show that the Jenkins Sisters were promised the prizes they claim or that Defendants were responsible for the competition or providing the prizes to the winner. Defendants indicate that Frontline Productions was not even incorporated until April 18, 2013. With respect to Plaintiffs' fraud claim, Defendants also argue that the claim is barred because it is based on the same conduct as Plaintiffs' breach of contract claims. Alternatively, Defendants argue that the claim is time-barred under the applicable statute of limitations.

At the conclusion of their motion, Defendants also request sanctions against Plaintiffs' counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure for filing a frivolous lawsuit against them.

### A.    Breach of Contract

The Michigan courts have stated that to demonstrate entitlement to a prize, the entrant in a giveaway contest must demonstrate an enforceable contract by showing: " '(1) the offer of a prize by the sponsor for the performance of a specified act, (2) competition in the contest, and (3) the performance of the

-12-

specified act.' " *Workmon v. Publishers Clearing House*, 118 F.3d 457, 459 (6th Cir. 1997) (quoting *Bellows v. Delaware McDonald's Corp.*, 206 Mich. App. 555, 558, 522 N.W.2d 707 (1994)).  "The offer (which includes the conditions and rules of the contest) limits the contract."  *Id.*

Here, Plaintiffs present evidence– most of which the Court finds admissible despite Defendants' arguments to the contrary– to show that applicants who paid a $50.00 fee were enrolled in the 2008 Gospel F.O.C.U.S. competition and promised certain prizes, including a recording contract, if they won.  They also show that the Jenkins Sisters competed in the contest and were declared the winners.  Defendants really only challenge whether Plaintiffs present evidence to show that The Word Network, Ms. Allen, and/or Frontline Productions are liable.  The Court finds that Plaintiffs present sufficient evidence to create a genuine issue of material fact on this issue.[2]

Plaintiffs respond that these defendants are liable under a partnership by estoppel theory, citing Michigan's Uniform Partnership Act.  (ECF No. 44 at Pg ID 541-42, citing Mich. Comp. Laws § 449.16(2).)  The Court does not believe that

---

[2]Notably, Plaintiffs have sought through discovery to obtain the application they submitted to enter the competition and other documentary evidence that might identify the entity responsible for the competition.  Defendants claimed in response that the evidence was not in their possession.  (ECF No. 44 Exs. K, L.)

-13-

this doctrine applies here.  Nevertheless, Plaintiffs present sufficient evidence from which a reasonable trier of fact could conclude that The Word Network, Ms. Allen, and Frontline Productions were responsible for the competition and therefore the prizes promised to the winner.

Notably as to Ms. Allen and Frontline Productions, the recording of the auditions in Atlanta reflect that Ms. Allen was identified as the executive producer and the credits close with the Frontline Productions logo.  The name "Frontline Productions," along with "The Word Network," appeared on the agreement the Jenkins family was asked to sign after the Jenkins Sisters won the competition. While Defendants may present evidence to show that Frontline Productions only was incorporated in Michigan in 2013 (*see* ECF No. 43 at Ex. L), this does not negate that it was doing business earlier.  The Articles of Incorporation identify Ms. Allen as the sole incorporator and owner of the shares of Frontline Production. (*Id*.)  If Frontline Productions in fact was not incorporated before 2013, then Ms. Allen is liable for the promises it made.  *See Bergy Bros., Inc. v. Zeeland Feeder Pig, Inc.*, 415 Mich. 286, 294, 327 N.W.2d 305, 308 (1982) ("Persons conducting business in the name of a pretend corporation indeed may be liable as partners for any debts incurred") (citing *Campbell v. Rukamp*, 260 Mich. 43, 244 N.W. 222 (1932)).

-14-

Defendants therefore are not entitled to summary judgment on Plaintiffs' breach of contract claims (Counts I and II).

## B.  Fraud/Constructive Fraud

In order to establish a fraud claim, a plaintiff must demonstrate that: "(1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without any knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100-01 (6th Cir. 2010) (citing *Cummins v. Robinson Twp.*, 283 Mich. App. 677, 770 N.W.2d 421, 435 (2009)). Defendants do not contest Plaintiffs' ability to show the elements of their fraud claim.  They only argue that a claim of fraud does not lie for breach of contract and, alternatively, that the claim is time-barred.

As Defendants indicate, "Michigan courts have taken care to 'avoid confusing contract and tort law.' " *Oak Street Funding, LLC v. Ingram*, 511 F. App'x 413, 417 (6th Cir. 2013) (quoting *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 532 N.W.2d 541, 546 (1995)).  As such, under Michigan law, to state a viable action in tort, the plaintiff must assert "

-15-

'a breach of duty separate and distinct from a breach of contract.' " *Id*. at 417-18 (quoting *Haas v. Montgomery Ward & Co.*, 812 F.2d 1015, 1016 (6th Cir. 1987) (citing *Hart v. Ludwig*, 347 Mich. 559, 79 N.W.2d 895, 898-99 (1956)). "A claim that is based on a breach of a promise is an action in contract, not in tort." *Id*. at 418.

The Michigan courts have held, however, that fraud inducing a party to enter a contract may give rise to a claim that is viable alongside a claim alleging a breach of the contract. *Huron Tool & Eng'g Co.*, 209 Mich. App. at 544-45, 532 N.W.2d at 371. Nevertheless, the fraud and breach of contract claims must be factually distinguishable. *Id*. at 546, 532 N.W.2d at 375 ("The danger of allowing contract law to drown in a sea of tort exists only where fraud and breach of contract claims are factually indistinguishable") (internal quotation marks and citation omitted). As the Michigan Court of Appeals explained, "a claim of fraud in the inducement, by definition, redresses misrepresentations that induce the buyer to enter into a contract but that do not in themselves constitute contract or warranty terms subsequently breached by the seller." *Id*.

Here, Plaintiffs' claim of fraud is premised on Defendants "representations regarding the awards and prizes related to the Gospel F.O.C.U.S. competition . . .." (First Am. Compl. ¶ 73.) They allege that Plaintiffs relied on this representation in

-16-

deciding to enter the competition.  (*Id*. ¶ 74.)  It is the failure to provide the same promised awards and prizes that are the premise of Plaintiffs' breach of contract claim.  As such, the Court agrees with Defendants that they are entitled to summary judgment with respect to Plaintiffs' fraud claim (Count III).

### C.   Michigan Consumer Protection Act

The Michigan Consumer Protection Act ("MCPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices" in relation to *inter alia* advertising and solicitation of a service, property, article, or business opportunity. Mich. Comp. Laws Ann. §§ 445.903, .903a-i.  Plaintiff's MCPA claim is premised on the promise to provide certain prizes to the winner of the competition.  (First Am. Comp. ¶¶ 91-94.)  Defendants seek summary judgment with respect to this claim, arguing that Plaintiffs lack admissible evidence to prove that The Word Network, Ms. Allen, or Frontline Productions made the alleged promises.

As discussed with respect to Plaintiffs' breach of contract claims, the Court finds that they present sufficient evidence to create a genuine issue of material fact with respect to this issue.  Defendants therefore have not demonstrated that they are entitled to summary judgment with respect to this claim.

### D.    Civil Conspiracy

The Michigan courts have defined a civil conspiracy as "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 384, 670 N.W.2d 569, 580 (2003), *aff'd*, 472 Mich. 91, 693 N.W.2d 358 (2005) (quotations marks and citation omitted).  Defendants argue that Plaintiffs' civil conspiracy claim fails because such a claim requires a separate actionable tort.  Michigan courts in fact have stated that "a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort."  *Id*. (citing *Early Detection Center, PC v. New York Life Ins. Co.*, 157 Mich. App. 618, 632, 403 N.W.2d 830 (1986)); *see also Future Now Enters., Inc. v. Foster*, 860 F. Supp. 2d 420, 429 (E.D. Mich. 2012), *aff'd*, 525 F. App'x 395 (6th Cir. 2013).  That pronouncement, however, has been made by courts in cases where the plaintiff's civil conspiracy claim is premised on a tort, only.  Here, Plaintiffs' claim is premised also on the violation of the MCPA and Plaintiffs' MCPA violation claim has not been dismissed.[3]

---

[3]The cases Defendants cite also provide that "a 'conspiracy claim takes on the limitations period for the underlying wrong that was the object of the conspiracy.'"  *Future Now Enters., Inc.*, 860 F. Supp. 2d at 429 (citing *Terlecki v.*

Defendants therefore are not entitled to summary judgment with respect to Plaintiffs' civil conspiracy claim (Count VII).

## IV.   Rule 11 Sanctions

Under Federal Rule of Civil Procedure 11, sanctions may be imposed on an attorney, law firm, or party based on the filing of a pleading, motion, or paper if "a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir.1988). The purpose of sanctions is to deter the abuse of the legal process. *Id.*

Rule 11 provides procedural requirements that *must* be followed before sanctions can be imposed.  Fed. R. Civ. P. 11(c)(2).  One of these requirements is a two-step process set forth in subdivision (c)(2) of the rule, known as the "safe harbor" provision.  This provision requires a party intending to file a motion for sanctions with the court to "first, serve the Rule 11 motion on the opposing party

---

*Stewart*, 278 Mich. App. 644, 653, 754 N.W.2d 899, 906 (2008)).  The statute of limitations for MCPA violations is six years.  Mich. Comp. Laws § 445.911(7).

for a designated period (at least twenty-one days); and then file the motion with the court." *Ridder v. City of Southfield*, 109 F.3d 288, 293-94 (6th Cir. 1997); *see also* Fed. R. Civ. P. 11(c)(2). The motion "must be made separately from any other motion . . .." Fed. R. Civ. P. 11(c)(2). This two-step procedure allows the opposing party twenty-one days to withdraw the challenged paper, claim, allegation, etc., and thus avoid Rule 11 sanctions. *Ridder*, 109 F.3d at 294.

Here, the record does not suggest that Defendants complied with Rule 11's requirement that they serve a motion for sanctions at least 21 days prior to filing or presenting it to the Court. Moreover, Defendants' request for sanctions comes within their motion for summary judgment rather than by separate motion, as the rule requires. The Court also finds sufficient evidence in the record at this stage to conclude that Plaintiffs' counsel did not violate Rule 11 by filing this lawsuit.

The Court, therefore, is denying Defendants' motion for Rule 11 sanctions.

## V.     Conclusion

For the reasons stated, the Court concludes that Defendants are entitled to summary judgment with respect to Plaintiffs' fraud claim (Count III). Plaintiffs stipulate to the dismissal of their tortious interference claims (Counts IV and V), thus the Court is dismissing those claims as well. The Court concludes, however, that Plaintiffs state viable breach of contract, MCPA, and civil conspiracy claims

-20-

and present sufficient admissible evidence to show that there are genuine issues of

material fact relevant to those claims.  The Court therefore denies summary

judgment to Defendants on those claims and denies their request for Rule 11

sanctions.

      Accordingly,

      **IT IS ORDERED**, that the motion for summary judgment filed by

Defendants World Religious Relief (d/b/a The Word Network), Alexis Allen, and

Frontline Productions is **GRANTED IN PART AND DENIED IN PART** and

Counts III, IV, and V, only, are **DISMISSED WITH PREJUDICE**.

Dated: March 10, 2014           s/PATRICK J. DUGGAN
                                      UNITED STATES DISTRICT JUDGE

Copies to:
Collin H. Nyeholt, Esq.
William J. McHenry, Esq.

-21-